IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRUCE B. WETSEL and SHERRY L. WETSEL,<br><br>               Plaintiffs,<br><br>     vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF ONE WATERFRONT TOWERS ("AOAO"), by and through its board of directors,<br><br>               Defendant. | Case No. 22-cv-00041 DKW-WRP<br><br>**ORDER (1) OVERRULING DEFENDANT'S OBJECTIONS AND (2) ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

This matter comes before the Court with the November 7, 2022 Findings and Recommendation (F&R) of the assigned U.S. Magistrate Judge. Dkt. No. 37. Therein, the Magistrate Judge recommends denying Defendant AOAO's request for attorneys' fees and costs, Dkt. No. 26, rejecting all five of the AOAO's bases for said request. *Id.*

On November 21, 2022, the AOAO timely objected to the F&R, re-asserting that it is entitled to fees and costs under two statutes: HRS § 514B-157(b) and HRS § 607-14. Dkt. No. 39. Upon review of the record, the Court agrees with the Magistrate Judge that the AOAO is not entitled to attorneys' fees and costs under

1

either statute. First, the Hawaiʻi Supreme Court has made clear that HRS § 514B-157(b) does not apply to an action like this one because the Wetsels never sought to "enforce" the governing condominium documents: they, in fact, highlighted the *absence* of authority within those documents as reason why the AOAO did not possess foreclosure rights. *See Schmidt v. Bd. of Dirs. of Ass'n of Apartment Owners of Marco Polo Apartments*, 836 P.2d 479, 482–83 (Haw. 1992).[1] Second, the Wetsels' wrongful foreclosure claim does not sound in assumpsit, leaving it outside the purview of HRS § 607-14.

## RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs Bruce and Sherry Wetsel allege that they previously owned an apartment ("Apartment") in the One Waterfront Towers condominium project in Honolulu. *See* Dkt. No. 22 at 3. Sometime before March 30, 2012, they became delinquent in paying their mortgage loans and homeowner association fees, the latter being owed to the AOAO to cover condominium project operating expenses. *Id.*

The AOAO engaged an attorney to pursue collection of the Wetsels' delinquent fees, recorded a lien against the Apartment, and informed the Wetsels via letters, notices, and other communications that it intended to conduct a public

---

[1] "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

2

power of sale foreclosure of the Apartment pursuant to HRS §§ 665-5–10 ("Part I"). *Id.* at 3–4. Through these communications, the AOAO represented that it held a power of sale in its favor, authorizing it to foreclose on and sell the Apartment. *Id.* at 4. On March 30, 2012, the AOAO followed through by foreclosing and evicting the Wetsels. *Id.*

Nearly ten years later, on January 24, 2022, the Wetsels challenged the AOAO's foreclosure by filing a Complaint in this Court, claiming that the AOAO had never possessed a power of sale and was thus not permitted to compel foreclosure. The Wetsels were spurred to take action so many years later because of a June 2020 Hawai'i Supreme Court ruling that Part I itself does not impart a power of sale to condominium owners' associations, and that, in order for condominium owners' associations to compel foreclosure under that Part, a power of sale must exist in the governing documents. *Malabe v. Ass'n of Apartment Owners of Exec. Ctr.*, 465 P.3d 777, 780, 786–87 (Haw. 2020) ("[I]n order for an association to utilize the nonjudicial power of sale foreclosure procedures set forth in [HRS §] 667, a power of sale in its favor must have existed in association bylaws or in another enforceable agreement with unit owners.").

The AOAO moved to dismiss the Complaint, contending the Wetsels' claims were time-barred due to the expiration of all relevant statutes of limitations. After briefing and oral argument, on July 22, 2022, this Court agreed and

dismissed the Wetsels' claims as time-barred. Dkt. No. 22. On the same day, the Clerk entered judgment in favor of the AOAO. Dkt. No. 23.

On September 9, 2022, the AOAO moved for an award of attorneys' fees in the amount of $11,094.24 and costs in the amount of $327.56, for a total of $11,421.80, asserting five separate bases for its motion. Dkt. Nos. 26, 26-1 at 1–2. On September 23, 2022, the Wetsels opposed, Dkt. No. 33, and on October 5, 2022, the AOAO replied. Dkt. No. 36. On November 7, 2022, the Magistrate Judge issued the F&R, finding and recommending that the Court deny the AOAO's request. Dkt. No. 37. On November 21, 2022, the AOAO objected to the F&R, challenging the recommendation on only two of the original five bases: HRS § 514B-157(b) and HRS § 607-14. Dkt. No. 39. The Wetsels did not respond to the AOAO's objection, *see* Local Rule 74.1(b), and this Order now follows.

## **DISCUSSION**

**I.    HRS § 514B-157(b)**

HRS § 514B-157(b) provides, in relevant part:

> If any claim by an owner is substantiated in any action against an association, any of its officers or directors, or its board to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an owner shall be awarded to such owner; . . .
>
> *If any claim by an owner is not substantiated in any court action against an association*, any of its officers or directors, *or its board to enforce any provision of the declaration, bylaws, house rules*, or this chapter, *then all reasonable and necessary expenses, costs, and*

> *attorneys' fees incurred by an association shall be awarded to the association*, unless before filing the action in court the owner has first submitted the claim to mediation, or to arbitration under subpart D, and made a good faith effort to resolve the dispute under any of those procedures.

*Id.* (emphasis added).

The AOAO contends it is entitled to attorneys' fees and costs under this statute because, although the Wetsels' Complaint did not explicitly invoke any of the governing condominium documents, any power of sale, had it existed, would necessarily have derived from the condominium association bylaws and/or other contractual agreements. *See* Dkt. Nos. 39 at 2, 4–7; 26 at 5–6; *see also Malabe*, 465 P.3d at 786. Therefore, the AOAO argues, the action sought to "enforce" the provisions of the governing documents, as written, in that they did not convey a power of sale.

As explained by the Magistrate Judge, *see* Dkt. No. 37 at 7–8, the Hawaiʻi Supreme Court's analysis in *Schmidt* precludes this argument. *See* 836 P.2d at 482–83. In *Schmidt*, the plaintiffs sued their homeowners' association for damages resulting from the association's failure to maintain common areas. *Id.* at 481. The court held that, even though maintenance of common areas was an affirmative contractual duty, the prevailing party was not entitled to attorneys' fees.[2] The

---

[2] *Schmidt* involved HRS § 514B-157(b)'s predecessor statute, HRS § 514A-94(b), which likewise authorized attorneys' fees and costs to the prevailing party "in any action against an association, any of its officers or directors, or its board of directors to enforce any provision of the declaration, bylaws, house rules, or [condominium] chapter . . . ." 836 P.2d at 482.

5

court reasoned that, because the action was not seeking to compel affirmative action on the part of the association, but was instead seeking to remedy the *failure* to take such action, it was thus not seeking to "enforce" the contract:

> Black's Law Dictionary (6th ed. 1990) defines "enforce," *inter alia*, to mean "[t]o put into execution, to cause to take effect; . . . to compel obedience to." *Id.* at 528. Webster's Encyclopedic Unabridged Dictionary of the English Language (1989) defines "enforce," *inter alia*, to mean "to . . . compel obedience to; . . . to impose (a course of action) upon a person . . . ." *Id.* at 473. Thus, the "plain and obvious" application of HRS § 514A-94(b) is to an owner's substantiated claim against an association or its board to impose an *affirmative* course of action upon the association to put into execution—or to compel obedience to—any provision of its declaration, by-laws, house rules, or any enumerated provision of HRS chapter 514A . . . .
>
> In this case, the Schmidts did not seek to enforce any *affirmative* action on the part of the Association to comply with any provision of the Association's declaration, by-laws, house rules, or HRS [§] 514A; rather, in their own words, they were 'seeking damages . . . for the Association's failure to comply with the By-Laws and Declaration.' As in any common, "garden variety" tort action, the Schmidts were seeking damages from the Association for the breach of a duty owed to them, *i.e.*, the Association's *failure* to enforce its declaration and by-laws. In the absence of any prayer for equitable, mandatory, or injunctive relief to compel obedience to the Association's declaration, by-laws, house rules, or any enumerated provision of HRS [§] 514A, HRS § 514A-94(b) does not apply to the Schmidts' action.

*Id.* at 482–83 (emphases in original).

Similarly, here, the Wetsels sought a retroactive remedy—principally, as in *Schmidt*, damages—for the AOAO's alleged conversion of their Apartment over a decade ago. *See generally* Complaint. They did not seek to "impose an *affirmative* course of action upon the association to put into execution—or to

6

compel obedience to—any provision" of its contracts or the condominium statute. *See Schmidt*, 836 P.2d at 482–83.  Therefore, under Hawai'i precedent, they did not seek to "enforce" any statutory or governing document provision, and HRS § 514B-157(b) does not apply.[3]

Tellingly, although the F&R relied heavily on *Schmidt*, the AOAO failed to contend with that case in its objections.  Instead, the AOAO relied on the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") interpretation of *California's* attorneys' fees statute in *In Re: Gold Strike Heights Homeowners' Ass'n*.  2018 WL 3405473 (9th Cir. July 12, 2018).  While *Gold Strike*, in a vacuum, might have been persuasive,[4] here, there is no need to rely on out-of-state authority—the

---

[3]If anything, the instant case is even less likely than *Schmidt* to represent a suit to "enforce" a provision of the AOAO's governing documents because here, unlike in *Schmidt*, no affirmative contractual duty was alleged to have been neglected.

[4]In *Gold Strike*, a California leaseholder sued a homeowners' association, alleging that the association had improperly foreclosed on his real property.  Following removal of the case to bankruptcy court, the bankruptcy court held in favor of the association on procedural grounds. Thereafter, the association moved for attorneys' fees under a California statute that, similar to HRS § 514B-157(b), authorized attorneys' fees and costs to the prevailing party "[i]n an action to enforce the governing documents" of a homeowners' association.  *See* Cal. Civ. Code § 5975; *see also* Cal. Civ. Code § 4150 (defining governing documents as "the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association").  The leaseholder argued that the attorneys' fees statute did not apply because the case had been dismissed on procedural grounds with "no mention of any attempt by him to enforce Governing Documents of any HOA." *Gold Strike*, 2018 WL 3405473 at *4.  The Ninth Circuit BAP disagreed, explaining that what determines whether the action seeks "to enforce the governing documents" under Cal. Civ. Code § 5975 is "the gravamen of the Complaint" and "the nature of the claim asserted," not the basis on which the dispute was ultimately resolved, nor whether the plaintiff specifically invoked the governing documents in his claim. *Id.* at *8, *11.  That court then concluded that, because the leaseholder's Complaint had challenged "rights and powers arising under the governing documents," to include whether the association "[]ever had the legal authority to foreclose," it was an action seeking to enforce the governing documents. *Id.* at *9–

7

Hawaiʻi Supreme Court has interpreted the very provision within the very statute on which the AOAO relies, and its interpretation conflicts with *Gold Strike*. The Court therefore overrules the AOAO's objection and adopts the F&R with regard to HRS § 514B-157(b).

II.   **HRS § 607-14**

HRS § 607-14 provides, in relevant part:

> *In all the courts, in all actions in the nature of assumpsit . . . , there shall be taxed as attorneys' fees, to be paid by the losing party* and to be included in the sum for which execution may issue, *a fee that the court determines to be reasonable*; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

*Id.* (emphasis added). "Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *808 Dev., LLC v. Murakami*, 141 P.3d 996, 1013 (Haw. 2006). "The mere fact that [a party]'s claims relate to a contract between the parties does not render a dispute

---

11 ("Regardless of how he titled his causes of action, the gravamen or gist of his complaint was to enforce the Governing Documents with respect to the non-judicial foreclosure."). The BAP did not consider whether the suit was attempting to compel any affirmative or contemporaneous course of action. *See id.*

between the parties an assumpsit action." *TSA Intern. Ltd. v. Shimizu Corp.*, 990 P.2d 713, 734 (Haw. 1999). Nor should the nature of a claim be determined by the party's own characterization of the claim. *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 886 (9th Cir. 2000). Rather, it should be deduced from "the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." *Leslie v. Estate of Tavares*, 994 P.2d 1047, 1052 (Haw. 2000).

The AOAO contends the Wetsels' conversion and/or wrongful foreclosure claims sound in assumpsit because each claim "is based in contract," or "is premised upon [their] contractual rights and the AOAO's alleged breach thereof." The thrust of each claim is "that the contract they had with the AOAO—the governing documents—did not permit the AOAO to utilize a non-judicial foreclosure procedure." Dkt. No. 39 at 3, 10; *see also* Dkt. No. 26 at 4–5.

Though true that the Wetsels allege the governing documents did not grant the AOAO a power of sale—and that their claims thus "relate to a contract"—this fact does not necessarily render the action one in assumpsit. *See TSA*, 990 P.2d at 734. Other circumstances are relevant, including the "facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." *See Tavares*, 994 P.2d at 1052.

The nature of the Wetsels' entire grievance, in light of the facts and issues raised in the complaint, is that the AOAO converted the Apartment by,

fraudulently and through misrepresentation, unlawfully foreclosing when it lacked the statutory and/or contractual authority to do so. The Court agrees with the Magistrate Judge, *see* Dkt. No. 37 at 9–13, that this action thus sounds in tort, not assumpsit. First, there is no doubt that conversion sounds in tort in Hawaiʻi. *See* Dkt. No. 37 at 10; *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 2015 WL 881577 at *9 (D. Haw. Feb. 27, 2015) (citing *Hough v. Pac. Ins. Co.*, 927 P.2d 858, 869 (Haw. 1996)) ("Conversion sounds in tort."). Second, wrongful foreclosure also sounds in tort when it is based on misrepresentation or fraud. *See* Dkt. No. 37 at 10–12 (citing *Benoist v. U.S. Bank Nat. Ass'n*, 2013 WL 704865 at *4 (D. Haw. Jan. 28, 2013), *adopted by sub nom. Benoist v. United States*, 2013 WL 705100 (D. Haw. Feb. 25, 2013)). Neither claim transforms into an assumpsit action simply by virtue of being partially rooted in the lack of statutory or contractual authority to foreclose. *See id.* (citing *Valencia v. Carrington Mortg. Servs., LLC*, 2013 WL 3223632 at *6 (D. Haw. May 9, 2013)). As *Valencia* explained:

> [T]he Hawaii Supreme Court has held that the action was not in the nature of assumpsit where the claims stemmed primarily from "allegations of fraud, breach of fiduciary duty, and numerous statutory violations." *TSA,* 990 P.2d at 719. Similarly, the core allegations . . . in this action . . . were that the assignment of the note and mortgage was unlawful and that the [] Defendants fraudulently proceeded to foreclose on the subject property. *See* ECF No. 1 (asserting claims for wrongful foreclosure, conspiracy, misrepresentation/fraudulent inducement, and negligence); ECF No. 23 (asserting claim for wrongful foreclosure); ECF No. 34–9

10

>> (asserting claims for wrongful foreclosure, misrepresentation/ fraudulent inducement, and negligence); ECF No. 130 (asserting claims for wrongful foreclosure and misrepresentation/fraudulent inducement); ECF No. 158 at 33–34 (asserting claim for wrongful foreclosure).  *Although these claims relate to the note and mortgage, the . . . Complaint did not allege that the [] Defendants breached the note or mortgage and or seek damages based on the breach of any obligation arising out of the note or mortgage.  Plaintiffs' primary allegations against the [] Defendants were that they violated statutory duties and lacked authority to foreclose* because they had no relationship to the note and mortgage.  The Court rejects the [] Defendants' argument that the relief requested by Plaintiffs transformed this entire action into one in the nature of assumpsit. . . . *See Pascual v. Aurora Loan Servs. LLC,* Civ. No. 10– 00759 JMS–KSC, 2012 WL 5881972, at *5 (D. Haw. Oct. 31, 2012), *adopted by* 2012 WL 5881858 (D. Haw. Nov. 21, 2012) (holding that the action was not in the nature of assumpsit where the plaintiff's primary allegations were that the defendant was not the legal mortgagee and lacked authority to enforce the assignment of the mortgage).

*Id.* at *6 (emphasis added).

So too here.  Although the Wetsels' claims *relate to* the governing documents—in the broad sense that any power of sale would have been found in those documents, *see Malabe*, 465 P.3d at 780, 786–87—the claims' "primary" or "core" allegations were that the AOAO fraudulently and unlawfully foreclosed without authority, not that the AOAO breached any contract.  *See Valencia*, 2013 WL 3223632 at *6; Dkt. No. 37 at 11 (F&R) (citing Dkt. No. 1 ¶ 26 (alleging Defendant fraudulently misrepresented its statutory authority to foreclose on its lien under Part I); *ibid.* ¶¶ 28, 29 (alleging Defendant viewed Plaintiffs' mortgage lender's delay in foreclosing on its mortgages as an opportunity to quickly acquire

11

the Apartment and its potential rental income)). As in *Valencia*, therefore, this action is not in the nature of assumpsit.

The AOAO's attempts to minimize and distinguish *Valencia* are unavailing. First, the AOAO contends that *Valencia*'s reasoning does not apply because, unlike in *Valencia* where the Plaintiffs did not claim any breach of contract, here, the Wetsels "claimed the AOAO's method of foreclosure violated the contractual agreement they had with the AOAO." *See* Dkt. No. 39 at 9. On the contrary, the Wetsels consistently disavowed any foreclosure right set forth in any written document. And, as discussed above, their claims, just as in *Valencia*, were not, at their essence, based on breach of any contract or duty contained therein, but rather on the AOAO's alleged fraud and misrepresentation and the tort-based duty not to convert another's property.

Second, the AOAO implies that a later-decided Hawaiʻi Supreme Court case, *Santiago v. Tanaka*, 366 P.3d 612 (Haw. 2016), overruled *Valencia*. *See* Dkt. No. 39 at 9. Not only did *Santiago* not do so, and, in fact, not even mention *Valencia*, but it does not even appear to be in conflict with *Valencia*. The *Santiago* passage cited by the AOAO, *see* Dkt. No. 39 at 8, held only that the right of a mortgagee to conduct a non-judicial foreclosure is created by contract rather than statute, and, thus, an action challenging the existence of such a right requires an analysis of the relevant contracts. *See Santiago*, 366 P.3d at 630. There is no basis

12

to assume this means any action requiring contractual analysis is *per se* in the nature of assumpsit.

Third, and finally, the AOAO claims that the fact that *Santiago*—which involved a claim of wrongful foreclosure—resulted in an award of attorneys' fees under the assumpsit statute "demonstrates that a claim for wrongful foreclosure . . . is considered 'in the nature of assumpsit' in Hawai'i state courts . . . ." Dkt. No. 39 at 8. Again, this is far too great a leap. Upon closer look, *Santiago* involved numerous claims and counterclaims, all principally rooted in the contracts between the parties. The plaintiffs there, buyers of a tavern, alleged that the seller-financier defendant had breached her contractual duty to disclose material information about the tavern prior to the sale. The plaintiffs ultimately defaulted on their mortgage and note, and the defendant ejected the plaintiffs from the tavern and initiated foreclosure proceedings against the property. The plaintiffs filed a complaint against the defendant for, *inter alia*, nondisclosure in breach of their disclosure contract, wrongful ejectment, and wrongful foreclosure, and the defendant counterclaimed for breach of mortgage and breach of note. After the plaintiffs prevailed in the action, the court wrote in a footnote that they were entitled to attorneys' fees under HRS § 607-14 as to the defendant's "breach of mortgage and breach of note counterclaims." *See Santiago*, 366 P.3d at 633–34 n.40. There is no comparison between the *Santiago* defendant's breach of contract counterclaims

13

and the Wetsels' wrongful foreclosure claim here, and *Santiago* in no way demonstrates, as the AOAO claims, that Hawai'i state courts consider *all* wrongful foreclosure cases to be in the nature of assumpsit.  *See* Dkt. No. 39 at 8.  Rather, *Santiago* appears to have been in the nature of assumpsit simply because the relevant counterclaims on which an attorneys' fees award was based were primarily rooted in the contractual agreements between the parties.[5]  In short, *Santiago* was, at heart, a contract dispute.  The instant case is not.

## CONCLUSION

For the reasons discussed herein, the Court ADOPTS the F&R, Dkt. No. 37, and OVERRULES Defendant's objections, Dkt. No. 39.  The motion for attorneys' fees and costs, Dkt. No. 26, is DENIED.

IT IS SO ORDERED.

DATED: January 19, 2023 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

_____
Bruce B. Wetsel and Sherry L. Wetsel v. Association of Apartment Owners of One Waterfront Towers AOAO by and through its board of directors; **ORDER (1) OVERRULING DEFENDANT'S OBJECTIONS AND (2) ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS**

---

[5]In conclusorily awarding attorneys' fees under the assumpsit statute in a footnote, the *Santiago* court provided no relevant analysis regarding its conclusion that the counterclaims, or the action as a whole, were in the nature of assumpsit.  *See* 366 P.3d at 634 n.40.